# Griffin *v.* Karter.

*Action of Trover.*

1. *Construction of statute dividing Blount county into eastern and western division; recording of conveyances.*—The act approved February 14, 1893, (Acts of 1892–93, p. 587), having relation to the recording of conveyances, &c., at Bangor in Blount county, taken in connection with the act approved February 13, 1891 (Acts of 1891–92, p. 592) dividing said county, for certain purposes, into two parts, to be known as the eastern and western division, respectively, practically makes two counties of the county of Blount for all the purposes of recording conveyances of real and personal property, and imputing notice of

[Griffin v. Karter.]

such conveyances by the fact of registration; and the necessary effect of such statute, in conjunction with the general laws, is, that conveyances must be recorded in the division of the county wherein the grantor resides; and, therefore, the recording of a mortgage of personalty, executed by a resident of the western division, should be in the probate office at Bangor in such western division, and the registration of such mortgage in the probate office in the eastern division does not import notice of the existence of such mortgage.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellant, Asa Griffith, against the appellee, J. H. Karter.

The complaint contained three counts, one in trover and two in case, claiming five hundred dollars damages for the taking by defendant of 3,500 pounds of seed cotton and one bale of lint cotton.

The cause was tried upon an agreed statement of facts, upon issue joined upon the plea of not guilty. This agreed statement of facts, as shown by the bill of exceptions, was, in substance, as follows: The mortgage under which plaintiff claims, and upon which his right against defendant was founded, was executed by Harris Cantrell on the 10th day of March, 1893, to secure an indebtedness therein mentioned and evidenced by his note in the sum of $934.18, due and payable to plaintiff on the 1st day of October, 1893, and bearing even date with said mortgage.

The mortgage was, filed for record and duly recorded March 18, 1893, in the office of the judge of probate of Blount county, Alabama, in volume 38 of mortgage records, kept at Oneonta, in said county. Neither at the date of the execution of said mortgage, nor at the time of the filing of the same for record, had the provisions of the special act of the legislature, approved February. 14, 1893, (Acts of 1892–93, pp. 587-588), been complied with by the authorities of Blount county, Alabama, as therein pointed out and designated. Volume 38 of mortgage record, in which said mortgage was recorded was then kept in the office of the judge of probate at Oneonta, and had always been kept in said office at Oneonta. Said mortgage was not recorded in any book of records kept at the office of the judge of probate of said county at Bangor, and had not been filed for record at Bangor. The property involved in the action, and

11

covered by the mortgage, was grown and raised by
Harris Cantrell, the mortgagor, during the year 1893,
on lands lying in the western division of Blount county,
Alabama, as established and created by act of the legis-
lature (Acts of 1890–91, pp. 592, 593), approved Feb-
ruary 13, 1891. Said cotton remained on said lands
until removed to Cullman county, Alabama, where it
was sold by the mortgagor and purchased by defendant,
on or about the 21st day of November, 1893. The de-
fendant purchased the cotton mentioned in the complaint
in good faith and for value and without any other notice
of plaintiff's mortgage thereon than that arising from
the filing of the mortgage for record and the recording
of the same as hereinbefore stated. There was evidence
tending to show the value of the cotton.

The mortgage was in the usual form of mortgages on
personal property and contained this clause among
others, viz. : "All of my crops of corn, cotton and all
other produce I may raise or cause to be raised, or that
may accrue to me in any legal manner during the year
1893, and every year thereafter until this debt is fully
paid, on any lands whatsoever." Then followed the
powers granting the mortgagee the right to take posses-
sion of the property and sell the same in case of default
of payment of the debt at maturity.

Upon this evidence the court, at the request of the
defendant, gave to the jury the following written charge :
"The court charges the jury that if they believe the evi-
dence, they will find in favor of the defendant." To the
giving of this charge the plaintiff duly excepted.

There were verdict and judgment for the defendant.
The plaintiff appeals, and assigns as error the giving of
the general affirmative charge in favor of the defendant.

The only question involved on this appeal is, whether
or not the defendant was charged with constructive no-
tice of plaintiff's right to the cotton in controversy by
the recording of the mortgage thereon, as appears from
the agreed statement of facts.

GEORGE H. PARKER and EMERY C. HALL, for ap-
pellant.—For the proper solution of the question pre-
sented on this appeal, it is necessary to determine what
effect, if any, the act approved February 14, 1893,
(Acts of 1892-93, p. 587) had upon section 1806 of the

[Griffin v. Karter.]

Code. The special act contains no repealing clause. It contains no word or clause requiring mortgages on property located in the western division of Blount county to be recorded, or filed for record at Bangor. It does require the probate judge to keep papers and books of record there, but whether they shall be duplicates, copies, or original books of records, the act does not say. The act does not contain any provision that a record or the recording of a mortgage, or the filing of a mortgage for record, at Bangor shall operate as notice as provided in section 1797 of the Code of 1886. The mortgage was recorded in the office of the judge of probate as provided by sections 1791 and 1806 of the Code of 1886. If section 1806 is repealed by the special act of 1892-93, it is by implication. The law does not favor the repeal of statutes by implication; and only declares such repeal when all efforts at reconciliation have failed. Only when there is a real repugnance in the provisions, does the earlier enactment yield to the latter. If section 1806 of the Code is not repealed by the special act, (Acts of 1892-93, pp. 587-588), the trial court committed error in its ruling.—*Herr v. Seymour*, 76 Ala. 270 ; *Enloe v. Reike*, 56 Ala. 500 ; *Parker v. Hubbard*, 64 Ala. 203 ; *Iverson v. State*, 52 Ala. 170 ; *Cook v. Meyer Bros.*, 73 Ala. 580.

WILHITE & WILHITE, and S. T. WERT, *contra.*—Section 1806 of the Code is changed by the act approved February 14, 1893, (Acts of 1892-93, p. 587), in so far as concerns Blount county ; and the mortgagor of the property mortgaged in this case, being in the western division of said county at the time of the execution of the mortgage, the same should have been recorded in that division. The registration of such mortgage in the eastern division does not constitute notice to the purchaser of such property of the existence of the mortgage. This results from the construction of the statute above referred to in connection with the act approved February 13, 1891 ; and from the consideration of the purpose for which the mortgage is required to be recorded.— Code of 1886, § 1806 ; Acts of 1890-91, pp. 592-93 ; Acts of 1892-93, pp. 587-88 ; *Monroe v. Hamilton*, 60 Ala. 226 ; *Simon v. Sewell*, 64 Ala. 241.

[Griffin v. Karter.]

McCLELLAN, J.—We construe the act of February 14, 1893, having relation to the recording of conveyances, &c., &c., at Bangor in Blount county, taken in connection with the act of February 13, 1891, dividing said county for certain purposes into two parts to be known as the Eastern and Western Division, respectively, (Acts 1892-93, pp. 587-89 ; Acts 1890-91, pp. 592-94), to practically make two counties of the county of Blount for all the purposes of recording conveyances of real and personal property, and imputing notice of conveyances by the fact of registration.    Section 5 of said first mentioned act in substance expressly declares its true intent and meaning to be that books of record shall be furnished and kept for the western division of said county in the same manner that similar books are furnished and kept at Oneonta for the eastern division.    Other sections provide that books shall be furnished by the commissioners court ''for the recording of all deeds, mortgages, and all papers required by law to be recorded, and for the record of wills, and all matters connected with the estates of deceased persons, and all guardianships, being and arising in the western division of said county, and pertaining to real and personal property in said division,'' and that ''said books shall be similar and like unto the books and records now kept'' in the office of the probate judge at Oneonta ; that such books, records and papers shall be kept at or within one mile of the court house of the western division at Bangor, where the probate judge must keep a clerk with plenary ministerial powers, and that regular terms of the probate court must be held for and in said western division.    There is no more room for saying that the registration thus provided for should be a mere transcript of the records at Oneonta than there is for saying that records made at Bangor should be transcribed on the books at Oneonta.    The books to be kept at the two places are not the same, nor to contain the same matter, but are to be ''similar and like unto'' each other, and are to be ''kept in the same manner.''    It is scarcely possible that the legislature would have failed to say so, if its purpose had been to require double registration of all conveyances and transfers of property in Blount county or of all conveyances, mortgages, wills, &c., ''pertaining to real and personal property'' in the western division of the county.    To the

[Griffin v. Karter.]

contrary, the only reasonable intent fairly deducible from the language employed was to separate the western division from the balance of the county as completely as that might be done by its erection into a new county for all the purposes of the *administration* of the probate office within the particular territory. And such is the necessary effect of the act operating in conjunction with general laws bearing upon the matters with which it deals. It is inapt to say that it *repeals* any such general law. It merely gives a particular meaning to the word "county" as used in them in respect of matters coming within its purview, when application of them is made to the territory constituting Blount county. It modifies such application by substituting for county so far as Blount is concerned the eastern division or western division as the case may be of that county. Thus, for instance, section 1796 of the Code in its application to Blount county would read: "Conveyances of real estate must be recorded in the division of the county in which such property is situated." So section 1806, which is directly involved in this case, is in nowise repealed as to Blount county, but is by this act modified so as to read as follows: Conveyances of personal property to secure debts, or to provide indemnity, must be recorded in the division of the county in which the grantor resides, and also in the division of the county or in other county where the property is at the date of the conveyance, &c., &c.

These considerations enforce the conclusion that after the passage of the act of 1893 there was no warrant of law for the registration of a mortgage, executed by a resident of the western division of Blount county on personal property at the time in said division, in the office of the judge of probate at Oneonta on the books there kept for the eastern division of said county, and that such registration of such mortgage did not import notice of its existence. The circuit judge so ruled in this case, and the judgment is affirmed.

Affirmed.